**422**

UNITED STATES of America, Plaintiff,

v.

Castellano DEAR, Defendant.

No. 90 CR 525-6.

United States District Court,
N.D. Illinois, E.D.

Dec. 16, 1991.

Carl P. Clavelli, Chicago, Ill., for defendant.

Josh Buchman, U.S. Atty., for U.S.

MEMORANDUM OPINION
AND ORDER

HOLDERMAN, District Judge:

Defendant Castellano Dear disagrees with the Government and the Probation Office as to the amount of financial loss attributable to him for sentencing purposes. For the reasons set forth below, the court finds that defendant Dear must be held accountable for losses totalling $171,139.39 resulting from his involvement in the credit card fraud conspiracy to which he has pleaded guilty.

I. BACKGROUND FACTS

The Government charged defendant Castellano Dear with violations of 18 U.S.C. Section 371 (conspiracy to commit an offense against the United States) and 18 U.S.C. Section 1029(b)(1) (attempt to commit credit card fraud). (Plea Agreement, ¶ 1.) Defendant Dear pleaded guilty to Count One of the indictment brought against him—the conspiracy charge. (*Id.,* ¶ 5.)

In January 1990 co-defendant Victor Woods during more than one conversation told Dear that he, Woods, had a lot of blank credit cards and that he, Woods, was trying to set up a deal to sell the cards. In early to mid-March 1990 Woods told Dear that he, Woods, had located a machine at a suburban YMCA that could be used to em-

boss the blank credit cards. (Hearing, Dec. 13, 1991.)

From March 25, 1990 to June of 1990, Dear knowingly participated in a conspiracy with co-defendants Woods, William Russell, Bryant Theodile, and Anne Hemesath to commit certain offenses against the United States. Those offenses included possession, use, and distribution of stolen credit cards. (*Id.*)

In furtherance of this conspiracy, on March 25, 1990, Dear accompanied Woods and Theodile to the YMCA in Des Plaines, Illinois. Woods instructed Dear to break into the YMCA and steal a credit card embossing machine. Using a hammer wrapped in a towel, Dear broke into the YMCA through a window and stole an Elliott credit card embossing machine. (*Id.*)

At the time that Dear stole the credit card embossing machine, he knew that Woods had a supply of blank credit cards and intended to obtain valid credit card account numbers and use the machine to produce counterfeit credit cards. (*Id.*) In fact, before stealing the embossing machine, Dear knew that Woods had obtained "a carton of blank credit cards." (Defendant's Version of the Offense at 1.)

Ultimately, Woods obtained valid credit card numbers and began to produce counterfeit credit cards. (Plea Agreement, ¶ 5.) Woods gave Dear five of the phony credit cards. (Defendant's Version of the Offense at 3.) On three occasions, Dear used or attempted to use the counterfeit credit cards to make purchases. Those purchases totalled at least $1,834.36. (Plea Agreement, ¶ 5.)

Dear understood that the counterfeit credit cards would be used for "joy-shopping." (Defendant's Version of the Offense at 2; Hearing, Dec. 13, 1991.) The amount of unauthorized charges made with the counterfeit credit cards produced by Dear's co-conspirators ultimately totalled $171,139.39. (Plea Agreement, ¶ 5.)

## II. DISCUSSION

Defendant Dear's objections to the application of the guidelines boil down to two issues: (1) whether the extent of the unauthorized charges were reasonably foreseeable; and (2) whether Dear withdrew from the conspiracy. The court will address each issue.

### A. *The Reasonable Foreseeability Issue*

■ Section 2F1.1 of the Sentencing Guidelines, which governs offenses involving fraud and deceit, controls calculation of the offense level for the credit card fraud conspiracy to which defendant Dear has pleaded guilty. Under Section 2F1.1(a), the base offense level for such a crime is Level 6. Under Section 2F1.1(b), however, the base offense level must be increased depending upon the amount lost by the victims of the specific fraud. For losses more than $120,000.00 but up to $200,000.00, seven levels must be added to the base offense level.

The Government and the Probation Office urge a seven level increase in the base offense level because Dear and his co-conspirators incurred $171,139.39 in unauthorized charges with the counterfeit credit cards they produced. The court agrees.

Section 1B1.3(a) of the Sentencing Guidelines requires this court to determine specific offense characteristics based upon:

all acts and omissions committed ... or for which the defendant would be otherwise accountable, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

United States Sentencing Commission, *Guidelines Manual,* § 1B1.3(a)(1) (Nov. 1990).

■ In the case of criminal activity undertaken in concert with others, the conduct for which a defendant "would be otherwise accountable" includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was "reasonably foreseeable" by the defendant. U.S.S.G. § 1B1.3, comment (n. 1); *United States v. Edwards,* 945 F.2d 1387,

1891 (7th Cir.1991). Where it is established that the conduct was neither within the scope of the defendant's agreement, nor was reasonably foreseeable in connection with the criminal activity the defendant agreed to jointly undertake, such conduct is not included in establishing the defendant's offense level. *Id.* Conduct of co-conspirators can be "reasonably foreseeable" to a particular defendant if that defendant "has demonstrated a substantial degree of commitment to the conspiracy's objectives, either through his words of his conduct." *Edwards,* 945 F.2d at 1394.

In this case the court finds that it was reasonably foreseeable that defendant Dear and his co-conspirators, in furtherance of the conspiracy, would make unauthorized charges totalling $171,139.39 with the counterfeit credit cards produced by the embossing machine Dear helped steal. Dear admits that he knew Woods had "a carton of blank credit cards." (Defendant's Version of the Offense at 1.) Dear also knew that the embosser which he helped to steal would be used by his co-conspirators to imprint the cards with valid credit card numbers. (*Id.;* Plea Agreement, ¶ 5.)

According to Dear, however, before the actual initial use of the embossing machine, Woods told him Woods was able to obtain only about twenty valid credit card numbers. (Hearing, Dec. 13, 1991.) Dear, therefore, "presumed that Woods would obtain a few valid credit card numbers, at most, and that each of them [Dear, Woods, and Theodile] would make a few purchases." (Defendant's Version of the Offense at 2.) Even if the court were to believe this assertion of Dear's subjective belief (which it does not), Dear must be held accountable for the conduct of co-conspirators which he could *reasonably* foresee and which was in furtherance of the conspiracy. U.S.S.G. § 1B1.3, comment (n. 1); *Edwards,* 945 F.2d at 1392.

A reasonable person would have foreseen that theft of an embossing machine to be used by co-conspirators for the imprinting of a carton-full of stolen credit cards could result in hundreds of thousands of dollars in fraudulent charges made by co-conspirators. Dear's assertion that he believed Woods would limit the crime to only twenty cards is just not credible. The carton Woods possessed in fact contained approximately 4,000 blank credit cards. (Government's Version of the Offense at 1–2.) If as little as $2000 were charged on each card,[1] Dear's co-conspirators would need to emboss fewer than 100 of the 4,000 cards to rack up the unauthorized charges at issue here. Upon consideration of Dear's understanding and his conduct, such charges clearly were within the "scope of agreement" between Dear and his co-conspirators. *Edwards,* 945 F.2d at 1392, 1396 ("the limiting principle underlying conspiracy law and the Guidelines is essentially one and the same").

Dear knew that Woods possessed a large number of blank cards, that Woods would attempt to obtain valid credit card numbers upon Dear's theft of the embossing machine, and that Dear and his co-conspirators, in furtherance of the conspiracy, would use the imprinted cards to make unauthorized purchases. Thus, the court finds that the $171,139.39 in unauthorized charges incurred in this case was reasonably foreseeable to defendant Dear and was incurred in furtherance of the conspiracy.

Accordingly, under Section 2F1.1(b) of the Sentencing Guidelines, defendant Dear's base offense level of 6 must be increased by seven levels because the victims of the specific fraud at issue lost $171,139.39.

### B. *The Withdrawal Issue*

■ In his reply brief as to his objections to the application of the guidelines, Dear argued for the first time that his liability was limited because he withdrew from the conspiracy after he unsuccessfully attempted to use one of the counterfeit credit cards at a downtown Chicago clothing store called "Syd Jerome's" on June 7, 1990. According to Dear, after that attempted

---

1. Each card had a minimum credit limit of $5000.00. (Gov.Mem. at 4.)

purchase he notified Woods "that he wanted nothing further to do with the conspiracy." (Reply at 7; *see also* Defendant's Version of the Offense at 3; Hearing, Dec. 13, 1991.)

The law on withdrawal from a conspiracy is clear. For withdrawal to limit a conspirator's liability:

> mere cessation of activity is not enough …; there must also be affirmative action, either the making of a clean breast to the authorities, or communication of the abandonment in a manner calculated to reach co-conspirators. And the burden of withdrawal lies on the defendant.

*United States v. Patel*, 879 F.2d 292, 294 (7th Cir.1989), *quoting United States v. Borelli*, 336 F.2d 376, 388 (2d Cir.1964).

As stated earlier, Dear raised the issue of the limitation on his liability based upon withdrawal only in his reply brief. After reviewing that reply brief, the court requested and received additional briefing on the issue of withdrawal. To resolve the withdrawal issue, however, the court conducted a hearing on December 13, 1991 at 10:30 a.m.

At that hearing Dear testified. Neither he nor the Government called any other witnesses or presented any other evidence. Dear's testimony established the foreseeability to Dear of the sale of the illegally embossed credit cards as a part of the conspiracy. His testimony also established the foreseeability of the use of the illegal credit cards to the extent the illegal cards were used—$171,139.39.

As to withdrawal, the court was not persuaded that Dear withdrew from the conspiracy. Dear has testified to expressions of concern to Woods and expressions to Woods of his, Dear's, desire not to do anything further to aid the conspiracy. Dear's vague and to some extent inconsistent testimony on the point was not entirely credible. Dear's argument that he withdrew from the conspiracy is rejected.

## III. CONCLUSION

For the reasons stated in this memorandum opinion and order: (1) under Section 2F1.1(b) of the Sentencing Guidelines, defendant Dear's base offense level of six must be increased by seven levels because the victims of the specific fraud at issue lost $171,139.39; and (2) Dear's sentencing is set for December 18, 1991 at 12:15 p.m.